605 F.2d 1130
 204 U.S.P.Q. 354
 MISS UNIVERSE, INC., a California Corp., Plaintiff-Appellee,
v.
William FLESHER, Fran Flesher, Mel Lynn and Treehouse Fun
Ranch, Inc., a California Corp., Defendants-Appellants.
MISS UNIVERSE, INC., a California Corp., Plaintiff-Appellant,
v.
William FLESHER, Fran Flesher, Mel Lynn and Treehouse Fun
Ranch, Inc., a California Corp., Defendants-Appellees,
 Nos. 77-2435, 77-2710.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 4, 1979.
 
 Thomas D. Kiley, Lyon & Lyon, Los Angeles, Cal., for defendants-appellants.
 Robert E. Hinerfeld, Murphy, Thornton, Hinerfeld & Cahill, Los Angeles, Cal., for plaintiff-appellee.
 Appeals from the United States District Court for the Central District of California.
 Before TRASK, KENNEDY and ANDERSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 This is an appeal from the grant of a preliminary injunction.[1] The district court found that there was inherent confusion of source and dilution of plaintiff's registered marks by the defendants' use of the marks "Miss Nude U.S.A." and "Ms. Nude U.S.A."[2] The defendants appeal from the entire injunction. The plaintiff appeals from one portion of the injunction. We find one part of the injunction unworkable and reverse as to it, and otherwise affirm the issuance of the preliminary injunction.
 
 FACTS
 
 2
 The plaintiff, Miss Universe, Inc. (referred to as Miss Universe), is the owner of the trademark and service mark Miss U.S.A.[3] Since 1952, Miss Universe has produced the Miss U.S.A. beauty pageant. Contestants from every state vie for the crown of Miss U.S.A. The contestants, all unmarried females, are judged on various qualities such as beauty, congeniality, background, and intelligence. The winner of the contest becomes this country's representative in the plaintiff's related Miss Universe pageant which includes entrants from around the world.
 
 
 3
 The defendants include: William and Fran Flesher, who are officers of the Treehouse Fun Ranch, Inc., as well as managing agents of the Treehouse's beauty pageant; the Treehouse corporation; and Mel Lynn, director of the 1977 pageant. The beauty pageant sponsored by Treehouse is variously referred to as the Miss Nude U.S.A., Ms. Nude U.S.A., and the Miss Nude International Beauty Pageant. The most obvious distinction between the two pageants arises from the fact that the plaintiff's contestants remain clothed (at least partially) throughout the contest, whereas the defendants' contestants (as indicated by the various titles) do not.
 
 
 4
 The district court made the following factual findings about the two pageants:
 
 
 5
 "3. Plaintiff's MISS U.S.A. Beauty Pageant has been broadcast on the CBS Television Network annually since 1965, sponsored by Procter & Gamble Company. In the Spring of 1976, the pageant was seen by an estimated viewing audience exceeding 60,000,000 people. The annual MISS UNIVERSE Beauty Pageant, in which MISS U.S.A. participates as a contestant, involves female contestants representing many nations. The international pageant is televised annually by Atlantic and Pacific satellite to an estimated viewing audience of 500,000,000 people in more than 40 countries. The total annual sponsor cost of the MISS U.S.A. and the MISS UNIVERSE Beauty Pageants exceeds $2,000,000.
 
 
 6
 "5. It is the policy and practice of plaintiff to conduct its MISS U.S.A. and MISS UNIVERSE Beauty Pageants in good taste and in a clean and wholesome manner. These pageants are dependent upon the goodwill of the contestants and their parents, many of whom would be likely to object if their daughters entered a MISS U.S.A. Beauty Pageant which they thought to have any relation to a MISS NUDE U.S.A. Beauty Pageant. In addition, the standards of the television broadcasting industry and of plaintiff's telecast sponsors oblige plaintiff to maintain a high moral tone to its beauty pageants and all associations therewith in the public mind.
 
 
 7
 "9. Defendants Flesher and Treehouse have promoted a beauty pageant in the County of San Bernardino in June of 1973, 1974, 1975, and 1976 under the name MISS NUDE U.S.A. Beauty Pageant. A majority of the contestants in those pageants were, at the time of competing, residents of the State of California. In none of the contests was there more than 27 contestants. Most of the States have not been represented by a contestant in any MISS NUDE U.S.A. Beauty Pageant. The entry rules for the contest have never required contestants to reside in, or be nationals, of, the United States of America. Until restrained by this Court's order, dated 7 April 1977, those defendants and defendant Lynn were publicizing promotion of a contest under the name MS. NUDE U.S.A. Since 17 April 1977, defendants have begun to promote a beauty pageant for the same time and place formerly assigned by them to the MS. NUDE U.S.A. Beauty Pageant. The new pageant uses a name formerly used by defendants Treehouse and Flesher for a beauty pageant promoted by them prior to 1976, viz. MISS NUDE INTERNATIONAL Beauty Pageant."
 
 
 8
 Miss Universe, Inc. v. Flesher, 433 F.Supp. 271, 272-273 (C.D.Cal.1977).
 
 
 9
 In July 1976, having learned of the defendants' contest, the plaintiff asked the defendants to desist from using the Miss Nude U.S.A. title. After the attempts at informal resolution of the controversy proved fruitless, the plaintiff brought the present action for infringement in district court.[4] The district court issued a temporary restraining order on May 7, 1977, which was followed by the entering of a preliminary injunction on June 22. The appeal is taken from this preliminary injunction.
 
 STANDARD OF REVIEW
 
 10
 As a general rule, the grant or refusal to grant a preliminary injunction will be overturned on appeal if there has been an abuse of discretion by the court below.[5] Benda v. Grand Lodge of Intern. Ass'n, etc., 584 F.2d 308, 314 (9th Cir. 1978).
 
 
 11
 While the parties pay lip service to the standard of review, both the plaintiff and the defendant attempt to try the merits of their respective cases in this court. They invite this court to make the initial findings,[6] based upon various pieces of documentary evidence included on appeal, on the various factors which are considered in determining whether there is a likelihood of confusion. We decline the invitation.
 
 
 12
 The Court of Appeals does review factual findings; however, we do not generally serve as fact-finders of first instance. Our review of factual issues is governed by carefully circumscribed standards which vary according to the type, stage, and nature of the previous proceedings. After a final decision on the merits, we can closely examine the different variables which are relevant to the likelihood of confusion determination. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).[7] However, the more narrow abuse of discretion standard applies when we are called upon to review the grant or denial of a preliminary injunction.[8]
 
 
 13
 In cases such as the present one, in granting a preliminary injunction, the parties will not have had a full opportunity to either develop or present their cases and the district court will have had only a brief opportunity to consider the different factors relevant to the likelihood of confusion determination.[9] That is one reason why this court generally limits its review to the more general determination as to whether the court below abused its discretion. See Burton v. Matanuska Valley Lines, 244 F.2d 647, 650 (9th Cir. 1957). After all, the injunction is merely attempting to maintain the status quo pending the trial on the merits. Id. Otherwise, if we were to decide all of these matters as requested by the parties, we would be prejudging the merits before there was a decision by the district court.
 
 
 14
 In determining whether there was an abuse of discretion in granting the preliminary injunction we look to see whether the court below correctly applied the proper legal standard relating to the issuance of this type of injunction. Benda, supra, 584 F.2d at 314.
 
 
 15
 In our previous decisions, this court has announced two legal standards applicable to the grant or denial of preliminary injunctions. See Jones v. Pacific Intermountain Express, 536 F.2d 817, 818-819 (9th Cir. 1976); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975). At first glance these standards may appear entirely different; nonetheless "they are merely extremes of a single continuum." Benda, supra, 584 F.2d at 315. On the one end of the scale we require the moving party to show (1) probable success, and (2) the possibility of irreparable injury. Benda, supra, 584 F.2d at 314-315; Jones, supra, 536 F.2d at 818-819. On the other end, the moving party is required to demonstrate (1) that serious questions are raised, and (2) that the balance of hardships are tipped sharply in his favor. Benda, supra, 584 F.2d at 314-315; William Inglis & Sons Baking Co., supra, 526 F.2d at 88. Our review is thus confined to these matters.
 
 DISCUSSION
 
 16
 The court below found that the plaintiff had and would continue to suffer irreparable harm so long as the defendants continued to use the names Miss Nude U.S.A. or Ms. Nude U.S.A. Additionally, the balance of equities favored the restraint of the defendants' use of the above names. The court noted that the plaintiff had a substantial investment which had been made "over many years in its well-known and highly regarded registered marks." On the other hand, the investment of the defendants in the Miss Nude U.S.A. and Ms. Nude U.S.A. names was found "de minimis." We do not believe that the district court abused its discretion in finding either irreparable harm or that the balance of hardship favored granting the injunction in favor of the plaintiff.
 
 
 17
 The court below did not expressly state that the plaintiff would probably succeed on the merits or that the case presents a serious question. Nevertheless, these determinations are implicit in the court's conclusion that there was "inherent confusion of source and dilution of plaintiff's registered marks in defendants' use of the marks MISS NUDE U.S.A. and MS. NUDE U.S.A. in connection with the promotion of a beauty pageant." We are able to infer that the court below found the case at least presented a serious question. To satisfy this, the moving party need only show either a fair chance of success on the merits or that the question is serious enough to require litigation. Benda, supra, 584 F.2d at 315. This has been met in the present case.
 
 
 18
 We conclude that the district court did not abuse its discretion in granting the preliminary injunction.
 
 
 19
 Nonetheless, we are still left with both parties' objections to the fourth paragraph of the injunction.[10] This allows the defendants to continue their use of the Miss or Ms. Nude U.S.A. names in any written materials if a hyphen is inserted between Nude and U.S.A. In all oral references to the names, the words hyphen or dash are to be plainly stated between the words Nude and U.S.A.
 
 
 20
 The defendants argue that it is "bizarre" to "subject parties to the penalty of or threat of contempt proceedings if they fail to pronounce punctuation in a phrase" which had been used repeatedly over a several-year period prior to the court order. Relying upon N. L. R. B. v. Bell Oil & Gas Co., 98 F.2d 405 (5th Cir. 1938), they claim that injunctions should not be hedged by conditions or qualifications which cannot be performed.
 
 
 21
 Plaintiff contends that it is impossible to comply with the hyphen requirement. In addition, Miss Universe claims that this part of the injunction effectively negates the protection which the injunction affords to what the district court found were its weighty interests in the Miss U.S.A. Name. We agree.
 
 
 22
 In light of the previously discussed findings by the district court on the seriousness of the question presented, the balancing of the equities, the possibility of irreparable harm, and the arguments by Both parties, we believe that the hyphen requirement in the temporary injunction was an abuse of discretion. Paragraph 4 is inconsistent with the findings made by the district court. It negates whatever protection the injunction would otherwise provide, which, after all, is the very reason for a temporary injunction.
 
 CONCLUSION
 
 23
 We hold that the hyphen requirement contained in paragraph 4 of the injunction was an abuse of discretion. We hold that the granting of the preliminary injunction itself was not an abuse of discretion. The preliminary injunction as modified by eliminating paragraph 4 is affirmed. This case may now proceed to a trial on the merits. We remand to the district court for further proceedings.
 
 
 24
 REMANDED.
 
 
 
 [1]
 A preliminary injunction issued under Fed.R.Civ.P. 65 is an appealable order under 28 U.S.C. 1292(a)(1), Jones v. Pacific Intermountain Express, 536 F.2d 817, 818 (9th Cir. 1976); and See Schainmann v. Brainard, 8 F.2d 11, 12 (9th Cir. 1925)
 
 
 [2]
 The "Findings of Fact and Conclusions of Law" made by the district judge are published at 433 F.Supp. 271. The preliminary injunction appears only in the Clerk's Record
 
 
 [3]
 Miss Universe is the owner of the following trademarks:
 Miss Universe, Registration No. 620,557, registered in 1956;
 Miss U.S.A., Registration No. 810,421, registered in 1966; and
 Miss U.S.A. Beauty Pageant, Registration No. 847,877, registered in 1968.
 In addition, Miss Universe also owns the service marks to:
 Miss U.S.A., Registration No. 808,974, registered in 1966; and
 Miss United States of America, Registration No. 808,975, registered in 1966.
 
 
 [4]
 The district court had jurisdiction under 28 U.S.C. § 1338, and pendent jurisdiction over the related claim of unfair competition/trademark dilution
 
 
 [5]
 An exception to this rule applies when the district court relies upon an erroneous legal premise. Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453, 454 (9th Cir. 1972); and See William Inglis & Sons Baking v. Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975). However, this may merely be one of the matters which is considered under the general abuse of discretion rule itself. See, Benda, supra, 584 F.2d at 314
 
 
 [6]
 One of the parties even goes so far as to drag up the remote criminal record of one of the persons involved in this case so that this court can make a credibility determination
 
 
 [7]
 In AMF, supra, we set out the following list of these factors:
 "1. strength of the mark;
 
 
 [2]
 proximity of the goods;
 
 
 [3]
 similarity of the marks;
 
 
 [4]
 evidence of actual confusion;
 
 
 [5]
 marketing channels used;
 
 
 [6]
 type of goods and the degree of care likely to be exercised by the purchaser;
 
 
 [7]
 defendant's intent in selecting the mark; and
 
 
 [8]
 likelihood of expansion of the product lines."
 599 F.2d at 348-349. This list is by no means exclusive or exhaustive; other variables come into play depending on the facts of the particular case. Id. at n.11. When the merits of this case are tried, we are confident that these matters will be given full consideration.
 
 
 [8]
 As one court has observed:
 "An appeal from an order granting or refusing an interlocutory injunction does not invoke the judicial discretion of the appellate court. The question is not whether or not that court in the exercise of its discretion would make or would have made the order. It was to the discretion of the trial court, not to that of the appellate court, that the law intrusted the granting or refusing of these injunctions, and the only question here is: Does the proof clearly establish an abuse of that discretion?"
 Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321, 331 (8th Cir. 1911), Cert. denied, 220 U.S. 618, 31 S.Ct. 721, 55 L.Ed. 612, Quoted with Approval in Burton v. Matanuska Valley Lines, 244 F.2d 647, 651 (9th Cir. 1957), and William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975).
 
 
 [9]
 For instance, the injunction here was filed less than three months after the present action was filed
 
 
 [10]
 The fourth paragraph of the injunction provides as follows:
 "4. Nothing contained herein shall be deemed to prevent defendants, or any of them, from using the mark 'MISS NUDE-U.S.A.' or 'MS. NUDE-U.S.A.' in the course of the promotion and/or publicizing of defendants' pageant and the titleholder thereof, Provided that the word 'NUDE' is used, whether in writing or orally, as a noun rather than as an adjective, and Further provided that defendants, and each of them, shall make it plain in every oral and written use of the mark that a hyphen separates the words 'NUDE' and 'U.S.A.' In all oral references to, or uses of, the mark 'MISS NUDE-U.S.A.' and/or 'MS. NUDE-U.S.A.', if any, defendants, and each of them, shall state plainly the words 'MISS NUDE HYPHEN U.S.A.' or 'MS. NUDE HYPHEN U.S.A.' At defendants' option, the word 'DASH' may be used in lieu of 'HYPHEN' in oral references to the subject marks.
 This also appears as paragraph 6 of the court's conclusions of law. 433 F.Supp. at 274-275.