**LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff,**

v.

**NATIONAL FOOTBALL LEAGUE et al., Defendants.**

Civ. No. 78–3523–HP.

United States District Court,
C. D. California.

Feb. 21, 1980.

Blecher, Collins & Hoecker by Maxwell M. Blecher, Howard F. Daniels, Brian McMahon, Los Angeles, Cal., for plaintiff.

O'Melveny & Myers by Henry C. Thumann, Patrick Lynch, Clark Waddoups, Los Angeles, Cal., for all defendants except Los Angeles Rams.

Nelson, Ritchie & Gill by Rodney E. Nelson, Richard Ritchie, Donald Brown, Los Angeles, Cal., for Los Angeles Rams Football Co.

Crosby, Heafey, Roach & May by Edwin A. Heafey, Jr., Oakland, Cal., for Alameda County Oakland Coliseum.

Alioto & Alioto by Joseph L. Alioto, San Francisco, Cal., special representative of the Oakland Raiders.

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

PREGERSON, Circuit Judge, sitting by designation.

This matter is before the court on plaintiff's motion for a preliminary injunction, which, according to plaintiff's moving papers, "could equally well be viewed as seeking summary judgment." After considering the pleadings, the memoranda of law, the affidavits, and the oral argument of counsel, the court has determined that the motion for a preliminary injunction should be granted. Insofar as the motion seeks summary judgment, however, summary judgment is denied.

In this action, the Los Angeles Memorial Coliseum Commission ("Coliseum"), seeks an injunction restraining the National Football League ("NFL") from invoking § 4.3 of the NFL's Constitution and Bylaws in con-

nection with the contemplated transfer of the Oakland Raiders Football Club to the Los Angeles Memorial Coliseum. Section 4.3 requires an affirmative vote of three-fourths of the NFL team owners before a member club may transfer the location of its home games from one city to another.[1] The Coliseum claims that § 4.3 constitutes a division of territories among competitors, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Accordingly, pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26, the Coliseum seeks to enjoin the NFL from invoking the three-fourths vote requirement on the ground that enforcement of § 4.3 threatens to block the Coliseum and the Oakland Raiders from finalizing an agreement that would bring the Raiders to Los Angeles as the Coliseum's new NFL tenant.

In earlier proceedings on the motion to dismiss the complaint, this court found that plaintiff had not adequately alleged standing to bring the action. In an order dismissing the complaint with leave to amend, *Los Angeles Memorial Coliseum Commission v. N. F. L.*, 468 F.Supp. 154 (C.D.Cal. 1979), this court further stated that, assuming plaintiff could successfully amend the complaint to plead the prerequisites for standing, the legality of § 4.3 must be determined under a rule of reason analysis, because its mere existence did not constitute a per se violation of the Sherman Act.

The court finds that plaintiff has now met the standing prerequisites set out in the court's prior order, 468 F.Supp. at 162. Thus, plaintiff has alleged the following:

1) that it is reasonably likely that an existing NFL team is seriously interested in moving to Los Angeles;

2) that it is reasonably likely that a transfer team would decide to play its home games in the Coliseum;

3) that it is reasonably likely that a transfer team and the Coliseum would be able to agree on lease terms; and

4) that it is reasonably likely that pursuant to § 4.3, the NFL members will not approve the transfer of an existing team to Los Angeles and the Coliseum before the 1980–81 season.

Turning to the question of plaintiff's entitlement to an injunction under § 16 of the Clayton Act, the court notes that § 16 provides for injunctive relief against threatened loss by a violation of the antitrust laws "when and under the same conditions and principles as injunctive relief against threatened conduct . . . is granted by courts of equity," 15 U.S.C. § 26. Therefore, before injunctive relief may be granted under § 16, the court must first determine whether plaintiffs have satisfied either of the two traditional equitable standards applicable to the grant or denial of a preliminary injunction.

## I. *Preliminary Injunction Standards*

In *William Inglis & Sons Baking Company v. I. T. T. Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1976), the Ninth Circuit set out two possible bases on which a preliminary injunction may be granted. The first requires the moving party to show (1) probable success on the merits, and (2) the possibility of irreparable injury. The second, or alternative, preliminary injunction standard requires the moving party to demonstrate only that (1) the suit raises "serious" questions of law, and (2) that the balance of hardships tips sharply in its favor. *See also Miss Universe, Inc. v. Flesher*, 605 F.2d 1130 (9th Cir. 1979).

Under the second standard, plaintiff is required to show that the balance of hardships tips sharply in its favor. Such a showing seems unlikely in this case since the alleged injury to the Coliseum in the absence of an injunction, i. e., lost revenues due to its failure to acquire an NFL team, is nearly evenly balanced by the financial injury that granting the injunction could cause to a third party, the Oakland Coliseum, due to its possible loss of the Raiders.

---

**1.** Section 4.3 provides: "No member club shall have the right to transfer its franchise or playing site to a different city . . . without prior approval by the affirmative vote of three-fourths of existing member clubs of the League."

This conclusion prevents the application of the alternative standard but does not end the court's inquiry. Under the first standard, plaintiff has demonstrated the requisite possibility of irreparable injury. This is so because the managing partner of the Raiders has indicated both that his club desires to play its home games in Los Angeles, and that the only significant obstacle to reaching an agreement with the Coliseum is the possible invocation of § 4.3. Having concluded that the possibility of irreparable injury exists, what remains, under the first standard, is for the court to determine whether plaintiff has shown a probability or a likelihood of success on the merits of its antitrust claim.

■ This court has already ruled that the legality of § 4.3 must be tested under the rule of reason. *Los Angeles Memorial Coliseum, supra,* 468 F.Supp. at 164–166. Under the rule of reason, "the court must balance the anticompetitive evils of the challenged restraints against their procompetitive virtues to determine whether the restraints are reasonable and thus legal." *Id.* at 167. Thus, to determine whether plaintiff has shown that it is likely to succeed on the merits, the court, on the facts presently before it, must undertake a preliminary rule of reason analysis by weighing the procompetitive and anticompetitive effects of § 4.3. If the anticompetitive effects appear to outweigh the procompetitive justifications, a preliminary injunction in plaintiff's favor would be in order.

II. *Preliminary Rule of Reason Analysis*

The court's previous order set out the following as a procompetitive virtue of § 4.3:

In order for professional football games to be played (and thus for economic competition to exist), the teams . . . must agree on *where* the games are to be played. Games, traditionally, are played where one of the participating teams has its home city. Therefore, an agreement on where the games are to be played necessarily involves an agreement on the location of each team's home city. [Sec-

tion] . . . 4.3 provide[s] a mechanism whereby the NFL teams can agree on where each transfer . . . team is to be located—to that extent [that section is an agreement] on where games are to be played.

468 F.Supp. at 166. It was this apparent procompetitive virtue which provided the court with the following rationale for adopting the rule of reason, rather than a per se rule, as the appropriate mode by which to evaluate the lawfulness of § 4.3:

Because these agreements promote competition to some extent, it cannot be said that they have a 'pernicious effect on competition' or that they lack 'any redeeming virtue.' *Northern Pacific R. Co. [v. United States,],* 356 U.S. [1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)] at 5, 78 S.Ct. at 518.

468 F.Supp. at 166.

In addition to functioning as a device to determine the sites where games are to be played, defendants have asserted that § 4.3 has certain other procompetitive aspects. The NFL argues, for example, that the rule "protects the value of each team's enterprise," and that it "provides the necessary incentive to develop and nurture such businesses." *See* NFL Brief in Opposition to Motion for Preliminary Injunction, 12–17. These justifications, however, seem to advance an argument that § 4.3 is procompetitive because it helps stabilize the professional football industry, by increasing profits and preserving the value of team franchises.

According to a recent opinion of the Supreme Court:

The early cases . . . foreclose the argument that because of the special characteristics of a particular industry, monopolistic arrangements will better promote trade and commerce than competition. . . . That kind of argument is properly addressed to Congress and may justify an exemption from the statute for special industries, but it is not permitted by the Rule of Reason.

*National Society of Professional Engineers v. United States,* 435 U.S. 679, 690, 98 S.Ct.

1355, 1364, 55 L.Ed.2d 637 (1978) (citations and footnote omitted). Thus, although "profit maximization is certainly in the best interests of the football industry, it is not, by itself, a procompetitive justification and, under *Professional Engineers* [*Id.* at 692, 98 S.Ct. at 1365], may not be factored into the reasonableness determination." *Los Angeles Memorial Coliseum, supra,* 468 F.Supp. at 167.

The primary anticompetitive aspect of § 4.3 is fairly self-evident: a rule which inhibits teams from transferring their home locations may act to prevent an existing team from transferring into the Los Angeles-Orange County area to compete with a team already there for dollars in the pockets of sports fans. In addition, a rule which hinders a new NFL team from moving into Los Angeles would inhibit local competition for football players, coaches, and other personnel. The extent to which a League's voting requirements restrict transfers of home locations from one city to another is, of course, dependent on the size of the vote required to approve a transfer. If an NFL team, desiring to play its home games in Los Angeles, must first win the unanimous approval of all teams in the League,[2] then its intentions obviously could be frustrated by the negative vote of a single team. Lower percentage vote requirements would, of course, constitute less of an obstacle to individual team decision-making, and would still provide a mechanism for determining the locations at which games are to be played.

This court's previous order noted that the mere fact that "some sort of agreement is needed to determine where each team is to have its home city . . . does not necessarily mean that it is reasonable and thus legal for the agreement to contain a three-fourths vote requirement." 468 F.Supp. at 166.

In a rule of reason case, the Ninth Circuit quoted with approval the following language from a Supreme Court decision:

"To sustain the restraint, it must be found to be reasonable both with respect to the public and to the parties, and that it is limited to what is *fairly necessary*, in the circumstances of the particular case . . . ." *Dr. Miles Medical Co. v. Park & Sons Co.,* 220 U.S. 373, 406, 31 S.Ct. 376, 384, 55 L.Ed. 502 (1911).

*Anderson v. American Automobile Association,* 454 F.2d 1240, 1246 (9th Cir. 1972) (emphasis added). In other words, although defendants can show that the rule in question has sufficient procompetitive merit to justify examining its lawfulness under the rule of reason analysis, a court may not uphold the restraint unless, with respect to the public and the parties, the restraint is limited to what is fairly necessary to obviate the concerns that brought it into being. If the restraint is more restrictive than "fairly necessary, in the circumstances of the particular case" it will be considered unreasonable, and thus in violation of § 1 of the Sherman Act.

In this case, the rule of reason analysis applies because some agreement among the teams is essential to permit the formation of an organized league. In determining whether the agreement or rule in question is reasonable, however, the court should assess the rule's ability to accommodate two competing interests: (1) the interest of the NFL in binding member teams to an agreement on where games will be played, and (2) the interest of the individual team in establishing its home location in whichever city it selects. A three-fourths vote requirement, by which eight out of twenty-eight teams can block the transfer of another team, appears to more than meet the NFL's interest, while giving marginal support to the interest of the individual team desiring to relocate. A majority vote requirement, on the other hand, would seem to provide a fairer accommodation of league and individual team interests. Furthermore, a majority vote requirement, in a matter affecting the public interest, is more consistent with the traditions of our democratic society.

---

**2.** When the present suit was first filed, § 4.3 required a unanimous vote to approve transfers. *See* Plaintiff's Supplemental Brief, Appendix A.

Although the court considers the question to be close, the balance on the rule of reason scale appears to tip slightly in favor of plaintiff. Plaintiff has therefore shown sufficient likelihood of success on the merits to be entitled to a preliminary injunction.

The record is insufficient, however, to permit the court to grant plaintiff summary judgment. As was made clear during the hearing on the preliminary injunction motion, *see* Reporter's Transcript at 76–77, several material facts remain in dispute. Further evidence as to the business of professional football, the purpose, effect, nature and history of § 4.3, the reason why the rule was imposed, and plaintiff's threatened injury must still be added to the record before the court will be in a position to rule on a motion for summary judgment under Fed.R.Civ.P. 56.

### III. *The Injunction*

IT IS HEREBY ORDERED that defendants are enjoined, pending the determination of this action, from enforcing § 4.3 of the National Football League's Constitution and Bylaws, as currently written, to prevent the Oakland Raiders Football Team, or any other NFL football team, from transferring the location of its home games to the Los Angeles Memorial Coliseum. It is, of course, understood that such an injunction, which merely restrains the invocation of § 4.3, does not force or require any team to take any action against its will.

IT IS FURTHER ORDERED that this Memorandum and Order shall constitute the court's findings of fact and conclusions of law as authorized by Fed.R.Civ.P. 52.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum and Order, by United States mail, upon the attorneys of record for the parties appearing herein.