634 F.2d 1197
 1980-81 Trade Cases 63,674
 LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff-Appellee,
v.
NATIONAL FOOTBALL LEAGUE, an Unincorporated Association;
Baltimore Football Club, Inc.; Buffalo Bills, Inc.; Chargers
Football Company; Chicago Bears Football Club, Inc.;
Cincinatti Bengals, Inc.; Cleveland Browns, Inc.; etc., et
al., Defendants-Appellants.
LOS ANGELES MEMORIAL COLISEUM COMMISSION, Plaintiff-Appellee,
v.
NATIONAL FOOTBALL LEAGUE, etc., et al., Defendants,
and
Los Angeles Rams Football Company, Defendant-Appellant.
 Nos. 80-5156, 80-5159.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 7, 1980.
Decided Dec. 12, 1980.
 
 Rodney E. Nelson, Nelson, Ritchie & Gill, Los Angeles, Cal., for L. A. rams.
 Joseph L. Alioto, Alioto & Alioto, San Francisco, Cal., Maxwell M. Blecher, Los Angeles, Cal., for Raiders.
 Patrick Lynch, Los Angeles, Cal., for NFL.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE and POOLE, Circuit Judges, and MacBRIDE,* Senior District Judge.
 POOLE, Circuit Judge:
 
 
 1
 The National Football League (NFL) and certain of its members appeal from a preliminary injunction which restrained them from applying section 4.3 of the League's Constitution and Bylaws to a proposed transfer by the Oakland Raiders Ltd., football team (Raiders) of their home game playing site from Oakland to the Los Angeles Memorial Coliseum (the Coliseum). Suit was filed by the appellee, the Los Angeles Memorial Coliseum Commission (Commission), seeking an adjudication that by adopting and enforcing section 4.3 the League and its members had violated the antitrust laws of the United States and asking that the defendants be enjoined from applying that rule. The district court granted a preliminary injunction prohibiting the League from invoking section 4.3 to prevent transfer of an NFL franchise to Los Angeles.
 
 
 2
 After careful consideration of the decision and the record in this case, we reverse because the district court abused its discretion in granting the preliminary injunction under circumstances where there was no showing of irreparable injury. We decline at this time to consider the merits of the antitrust claims, although that is strenuously urged by the parties. Those issues have not yet been fully addressed or finally decided by the district court.
 
 FACTS
 
 3
 NFL is an unincorporated association of 28 member teams, each located in a designated metropolitan area where its "home games" are played. The League's Constitution and Bylaws provide that most important decisions must be approved by a vote of three-fourths of the owners of the member teams. Appellants estimate that 95% of NFL's decisions require such a vote, and counsel for the Commission concede that a three-quarters majority vote requirement "is now relatively uniform" in NFL matters. Several provisions of the Bylaws relate to matters affecting the home locations of the member teams. Section 4.3, the rule involved here, requires a three-fourths vote of team owners before any member club may transfer the location of its franchise or playing site to a different city.[1] Section 3.1 requires similar approval before a new member club may be admitted to NFL.
 
 
 4
 In July 1978 the Los Angeles Rams football team announced its intention to move from the Los Angeles Coliseum where it had played since 1946 to Anaheim Stadium in Orange County. Anaheim is less than 40 miles from the Coliseum and is within the same greater metropolitan area. The move was to commence at the beginning of the 1980-81 football season. Faced with the prospect of having no professional football tenant in the Coliseum for the first time in many years, the Commission which operates the facility began to seek a replacement team. It perceived sections 4.3 and 3.1 as potential obstacles to its attainment of a new tenant either through a new franchise or relocation of an existing one.
 
 
 5
 The Commission brought an antitrust action against the NFL and its member teams under Section 16 of the Clayton Act, 15 U.S.C. § 26,[2] to enjoin enforcement of these provisions, charging that they violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. In February 1979 the district court denied the Commission's motion for partial summary judgment and dismissed the complaint for lack of standing, with leave to amend. Los Angeles Memorial Coliseum Commission v. National Football League, 468 F.Supp. 154 (C.D.Cal.1979).[3]
 
 
 6
 After filing an amended complaint which contained language tracking the Court's suggested cure of the standing defects, the Commission moved in January 1980 for a preliminary injunction to restrain defendants from invoking section 4.3 or taking other action specifically to prevent transfer of the Oakland Raiders' home site to the Los Angeles Coliseum. There had been negotiations in late 1979 between the Coliseum and Raiders' officials which contemplated a transfer effective for the 1980 season. The Commission's motion alleged that enforcement of section 4.3 threatened to block final agreement on the transfer. Neither the Raiders nor the Coliseum ever requested a vote or other action by the League before the preliminary injunction was sought; nor had the League taken action one way or the other.
 
 
 7
 On February 21, 1980, after a hearing, the district court granted the Commission's motion and entered an order enjoining defendants from enforcing section 4.3, as then "currently written," to prevent the Raiders or any other NFL team from transferring the location of its home games to the Coliseum. The order was accompanied by a memorandum Opinion indicating that the allegations of the amended complaint were sufficient to overcome the standing problem, that the plaintiff's showing on the motion satisfied the conditions for a preliminary injunction, but that the record was insufficient to permit summary judgment. Los Angeles Memorial Coliseum Commission v. National Football League, 484 F.Supp. 1274 (C.D.Cal.1980).
 
 
 8
 Defendants immediately appealed and obtained from this Court an order staying the preliminary injunction.[4] We have jurisdiction under 28 U.S.C. § 1292(a)(1). Shortly thereafter, the Commission and Raiders signed a memorandum of agreement on lease terms, and Raiders' officials publicly announced their intention to proceed with the move to Los Angeles. Following the appointment of a special committee to evaluate the proposed move, the League took a formal vote of its members which disapproved the transfer by 22 against, none in favor, and five abstaining.
 
 
 9
 LEGAL STANDARDS FOR GRANTING AND REVIEWING THE PRELIMINARY INJUNCTION
 
 
 10
 We deem it important to emphasize at the outset in this highly publicized dispute that we are reviewing the grant of a preliminary injunction, not a final decision on the merits. We start with the general principle that an order issuing or denying a preliminary injunction will normally be reversed only if the lower court abused its discretion or based its decision upon erroneous legal premises. City of Anaheim v. Kleppe, 590 F.2d 285, 288 n.4 (9th Cir. 1978); William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975). The reviewing court must determine whether the district court employed the proper legal standard in issuing the injunction and whether it abused its discretion in applying that standard. Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1133-34 (9th Cir. 1979); Benda v. Grand Lodge of International Association of Machinists, etc., 584 F.2d 308, 315 (9th Cir. 1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). An injunction may also be set aside if the court relied on erroneous legal premises in its application of the standard, such as in its preliminary review of the merits. Kennecott Copper Corp., etc. v. Costle, 572 F.2d 1349, 1357 (9th Cir. 1978); California ex rel. Younger v. Tahoe Regional Planning Agency, 516 F.2d 215, 217 (9th Cir.) cert. denied, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97 (1975); Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453, 454 (9th Cir. 1972); cf. Miss Universe Inc. v. Flesher, supra, 605 F.2d at 1133 n.5.
 
 
 11
 Under the Clayton Act which is involved here injunctive relief is provided under the same conditions and principles as such relief is granted generally by courts of equity. 15 U.S.C.A. § 26 (1979). A fundamental principle applied in such courts is that the basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. Larry P. v. Riles, 502 F.2d 963, 965 (9th Cir. 1974); Washington Capitols Basketball Club, Inc. v. Barry, 419 F.2d 472, 476 (9th Cir. 1969); Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804 (9th Cir.) cert. denied, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Sierra Club v. Hathaway, 579 F.2d 1162, 1167 (9th Cir. 1978); Munoz v. County of Imperial, 604 F.2d 1174, 1175-76 (9th Cir. 1979), cert. granted 445 U.S. 903, 100 S.Ct. 1077, 63 L.Ed.2d 318 (1980); County of Alameda v. Weinberger, 520 F.2d 344, 349 (9th Cir. 1975). In this circuit, the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. Inglis, supra, 526 F.2d at 88. These are not separate tests, but the outer reaches "of a single continuum." Benda, supra, 584 F.2d at 315.
 
 
 12
 The district court concluded that the plaintiff was unlikely to show that the balance of hardships tipped sharply in its favor, and it therefore rested its grant of preliminary injunction on a finding that plaintiff qualified for relief under the first half of this alternate formulation. Los Angeles Memorial Coliseum, supra, 484 F.Supp. at 1275-76. We conclude that the court erred in issuing a preliminary injunction because there was no showing of irreparable injury. In so holding, we treat the two reported opinions of the district court so far as pertinent to this decision as its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.
 
 Irreparable Injury
 
 13
 The Commission demonstrated no real and concrete injury or even threat thereof when it sought the preliminary injunction. As the district court recognized, section 16 of the Clayton Act authorizes injunctive relief in reasonable anticipation of threatened as well as actual injury. 15 U.S.C. § 26; Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). However, the party seeking such relief must demonstrate "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." Id. The court ruled that the Commission met the standing requirements of section 16 by alleging that it was "reasonably likely" that an existing NFL team was "seriously interested" in moving to Los Angeles; that a transfer team would decide to play its home games in the Coliseum; that lease terms would be agreed upon; and that "pursuant to section 4.3, the NFL members (would) not approve the transfer of an existing team to Los Angeles and the Coliseum before the 1980-81 season." 484 F.Supp. at 1275. Even assuming that these allegations might suffice to establish standing, they would not, alone, satisfy the plaintiff's burden of demonstrating immediate threatened injury as a prerequisite to preliminary injunctive relief. The Commission's "evidence" of a threat of disapproval of the transfer consisted mainly of an affidavit of a Commission member stating that the Raiders' owner had said he was convinced he could not obtain League approval; that two other team owners predicted the Raiders would not get the votes; and that one of these owners said the NFL Commissioner was opposed to the transfer. Affidavit of William Robertson (Jan. 18, 1980). Defendants moved to strike these unsupported factual allegations. But even were this sufficient to justify some apprehension of disapproval, it did not establish on any factual basis that section 4.3's requirement of a three-fourths vote was a realistic block to transfer, as alleged, or otherwise, for both Coliseum and the Raiders deliberately refrained from seeking a vote. They attacked Section 4.3 as applied to this particular transfer,[5] claiming it to be an unreasonable obstacle without first determining whether that perceived barrier was shadow or substance.
 
 
 14
 Even if some significant threat of injury be hypothesized, it was neither found nor shown to be irreparable. The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies. Sampson v. Murray, 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974). The district court specifically stated that the reason plaintiff had demonstrated the requisite possibility of irreparable injury was:
 
 
 15
 because the managing partner of the Raiders has indicated both that his club desires to play its home games in Los Angeles, and that the only significant obstacle to reaching an agreement with the Coliseum is the possible invocation of section 4.3. 484 F.Supp. at 1276.
 
 
 16
 The court identified "the alleged injury to the Coliseum in the absence of an injunction" as "lost revenues due to its failure to acquire an NFL team." Id. at 1275. It is well established, however, that such monetary injury is not normally considered irreparable. The Supreme Court has stated:
 
 
 17
 "(T)he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury ... 'The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended ... are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.' "
 
 
 18
 Sampson v. Murray, supra, 415 U.S. at 90, 94 S.Ct. at 952, quoting Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (D.C.Cir.1958). The Coliseum's lost revenues would be compensable by a damage award should the Commission ultimately prevail on the merits. The district court, therefore, proceeded upon the further erroneous legal premise that the type of injury it identified was irreparable and abused its discretion in improperly granting a preliminary injunction on the basis of such threatened injury.
 
 
 19
 Other than the threat of lost revenues, the plaintiff did not demonstrate any threat of harm that would have supported a finding of irreparable injury. The amended complaint alleged that without injunctive relief, the Commission would suffer "a diminution of revenues, a diminution of the market value of plaintiff's property and the loss of substantial goodwill normally attached to a profitable enterprise." In support of its motion the Commission argued that without a preliminary injunction it would be unable to enter into a lease agreement, begin stadium renovations, obtain financing for the renovations, or respond to the Raiders' alleged demand for a nonrefundable advance payment to cover transfer expenses. All of these are but monetary injuries which could be remedied by a damage award. The Commission also claimed that it would lose its only opportunity to obtain a professional football tenant, since the Raiders were the only team not already committed by long-term leases and would have to enter into another long-term lease in Oakland if not allowed to move to Los Angeles. There was, however, no factual showing that the Raiders would indeed be forced into a long-term commitment in Oakland or that the Coliseum would be unable in the near future to obtain another transfer team or new franchise as a tenant. Nor did the Commission contend or show that loss of the Raiders as a tenant threatened to put it or the Coliseum out of business.[6] Compare Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970); Foremost International Tours, Inc. v. Quantas Airways, Ltd., 379 F.Supp. 88, 97 (D.Haw.1974), aff'd, 525 F.2d 281 (9th Cir. 1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). It was undisputed that the Coliseum continues to have strong football attractions including the teams of the University of Southern California and the University of California, Los Angeles. The plaintiff simply did not make the requisite showing of irreparable harm.
 
 Balancing Hardships
 
 20
 The district court not only failed to identify the essential of irreparable injury to plaintiff, but also failed to identify the harms which a preliminary injunction might cause to defendants and to weigh these against plaintiff's threatened injury. In its only finding on the balance of hardships, the court stated:
 
 
 21
 Under the second standard (of Inglis,) plaintiff is required to show that the balance of hardships tips sharply in its favor. Such a showing seems unlikely in this case since the alleged injury to the Coliseum in the absence of an injunction, i. e., lost revenues due to its failure to acquire an NFL team, is nearly evenly balanced by the financial injury that granting the injunction could cause to a third party, the Oakland Coliseum, due to its possible loss of the Raiders. (Emphasis added.)
 
 
 22
 484 F.Supp. at 1275. Whatever may be the rationale of balancing the injury of a third party against plaintiff's, the court could have reached no balance of harms favoring the Commission without considering the potential injury to the NFL and its members.[7] This it did not do.
 
 
 23
 Traditional standards for granting a preliminary injunction impose a duty on the court to balance the interests of all parties and weigh the damage to each, mindful of the moving party's burden to show the possibility of irreparable injury to itself and the probability of success on the merits. Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); Constructors Association of Western Pennsylvania v. Kreps, 573 F.2d 811, 815 (3rd Cir. 1978); Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 330 (9th Cir. 1975); Sierra Club v. Hickel, 433 F.2d 24, 33 (9th Cir. 1970) aff'd, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Inglis clarified and added flexibility to understanding the burden carried by the moving party; it did not eliminate the requirement that some balance of hardships favoring that party be established by the record.[8]
 
 
 24
 Under the continuum or sliding scale articulated in Benda a minimal showing on the merits is required even when the balance of harms tips decidedly toward the moving party.[9] Conversely, at least a minimal tip in the balance of hardships must be found even when the strongest showing on the merits is made. Here a preliminary injunction was granted "(a)lthough the court consider(ed) the question (on the merits) to be close," 484 F.Supp. at 1278, and without finding a balance of harms favoring plaintiff. Such a combination is clearly insufficient under Benda.
 
 CONCLUSION
 
 25
 For the reasons we have set forth above the order granting preliminary injunction is reversed and the case is remanded to the district court for further proceedings consistent with this Opinion.
 
 
 26
 REVERSED.
 
 WALLACE, Circuit Judge, concurring in result:
 
 27
 I concur in the result reached by the majority, but I go no farther than to decide the one dispositive issue. The district judge granted the injunction after finding a combination of probability of success on the merits and the possibility of irreparable injury pursuant to the Inglis formulation. Los Angeles Memorial Coliseum Comm'n v. National Football League, 484 F.Supp. 1274, 1276-78 (C.D.Cal.1980). I would reverse solely on the ground that the Commission has not shown that it will suffer any injury apart from economic injury. The Commission's injury is, therefore, not irreparable, and the district court abused its discretion in granting the preliminary injunction. Because failure to show irreparable injury is a clear and sufficient ground for reversal, I would not reach the other issues addressed by the majority.
 
 
 
 *
 The Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Since October 1978, § 4.3 has provided as follows:
 The League shall have exclusive control of the exhibition of football games by member clubs within the home territory of each member. No member club shall have the right to transfer its franchise or playing site to a different city, either within or outside its home territory, without prior approval of the affirmative vote of three-fourths of the existing member clubs of the League.
 At the time the Commission filed this action, § 4.3 required three-fourths approval of a transfer to a city outside the existing team's "home territory" and unanimous approval if the new city was within the home territory of another NFL franchise. In October 1978, at least partly in response to the lawsuit, the NFL amended this section to require three-fourths approval of all transfers. Appellee and amicus Oakland Raiders, Ltd., now dispute the validity of this amendment; however, that issue is not dispositive since the district court considered and ruled upon the section as amended, not as previously stated.
 
 
 [2]
 This section in pertinent part authorizes any person to sue for injunctive relief:
 against threatened loss or damage by a violation of the antitrust laws ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, ... and upon ... a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue .... 15 U.S.C.A. § 26 (1979).
 
 
 [3]
 The court held that the Commission had failed to allege a significant threat of injury from an impending violation of the antitrust laws, as required by section 16 of the Clayton Act and Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Los Angeles Memorial Coliseum, supra, 468 F.Supp. at 158-62
 
 
 [4]
 Appellee's subsequent motion to vacate the stay was denied. After the lifting of the injunction, NFL commenced an action in the state court against the Raiders for breach of contract. The district court restrained prosecution of the NFL's state suit. This court granted NFL's petition for a writ of mandamus to discharge the restraining order
 
 
 [5]
 That the Coliseum's challenge of section 4.3 was "as applied" to this specific Raider transfer, and not "on its face," is clear. Its Opposition Brief criticized both the NFL and the trial court for evaluating section 4.3 "in the abstract." (Red Br., 23-24) Its brief states in part:
 The critical task in applying the Sherman Act here is to define the conduct at issue. Defendants prefer to debate the abstract question of the justification for any rule regulating any possible transfer of a franchise. In effect, they are seeking an advisory opinion from the Court as to their right to have some say in a transfer to an unspecified location in unknown circumstance which might occur in the future.
 Plaintiff contends that the issue before the Court is the purpose and effect of the conduct actually engaged in by the defendants. The question for decision is the right of the NFL owners to block the Raiders from relocating to Los Angeles by applying § 4.3 of their By-laws. The issue is not whether § 4.3 in some other form could be used to block some other transfer at some other time. (Red Br., 23-24)
 When the focus is directed to the actual conduct by defendants, instead of hypothetical abstractions as defendants prefer, it becomes readily apparent that the refusal to permit the Raiders' transfer is manifestly illegal under either a per se or a rule of reason analysis. As applied to the conduct at issue in this case, both approaches turn on the same factors and lead to the same result ...." (Red Br., 23-24)
 Since the rule had not yet been applied to the proposed transfer when the injunction was sought, it was the Coliseum, not NFL, that was seeking an advisory opinion on the rule's validity "as applied."
 
 
 [6]
 On this appeal, the Commission now alleges that loss of revenue to the Coliseum could cause a default on bonds which financed the Sports Arena. It also points to its inability to fulfill its legal responsibilities to the community and the loss of various other intangible and nonquantifiable benefits. These threatened injuries were not specifically presented to the district court and were not grounds for its finding of irreparable injury and decision to grant the injunction
 
 
 [7]
 For example, the League and its members may have been forced to realign teams and divisions in disregard of their business judgment and may have suffered loss of goodwill resulting from the Raiders' departure from a city whose fans are claimed consistently to have supported the team over the years
 
 
 [8]
 Cases in this circuit since Inglis have continued to include a balance of harms test in the traditional formulation. Munoz v. County of Imperial, supra, 604 F.2d at 1175-76; Sierra Club v. Hathaway, supra, 579 F.2d at 1167; Warm Springs Dam Task Force v. Gribble, 565 F.2d 549, 551 (9th Cir. 1977)
 
 
 [9]
 This court said in Benda, 584 F.2d at 315:
 (T)here are not really two entirely separate tests, but ... merely extremes of a single continuum .... The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. No chance of success at all, however, will not suffice. (citations omitted)