**Morris Benedict ARON, Plaintiff,**

v.

**MICHIGAN HEALTH CARE CORPORA-TION, Lakeside Community Hospital, Inc., Medical Staff of Lakeside Community Hospital, Inc., and Claude Herman, M.D., Defendants.**

No. CV–R–84–240–ECR.

United States District Court, D. Nevada.

June 29, 1984.

Frederic R. Starich, Reno, Nev., for plaintiff.

Clinton E. Wooster, Reno, Nev., for defendants Michigan Health Care Corp. and Lakeside Community Hosp.

Jack I. McAuliffe, Reno, Nev., for defendant Claude Herman, M.D.

## ORDER

EDWARD C. REED, Jr., District Judge.

### BACKGROUND

Plaintiff is a physician specializing in orthopedic surgery. Defendant Herman, who is also an orthopedist, is an active [1] member of the staff of defendant Lakeside Community Hospital (Lakeside), and was in fact that hospital's only active staff orthopedist during the period involved in this lawsuit.

In January 1984, plaintiff entered into a contract whereby he became an employee of defendant Herman. He also became a

---

**1.** Article IV, § 2 of Defendant Lakeside's Bylaws provides:

The Active Medical Staff shall consist of those M.D. and D.O. members who have completed the requirement of Provisional Medical Staff tenure, and who have been recom- mended by the Medical Staff for appointment to the Active Medical Staff, and who have been so appointed by the Board of Directors, and who's [sic] principle [sic] practice is at Lakeside Community Hospital, Inc.

provisional staff member at Lakeside. Lakeside's bylaws provide that "[a]ll initial appointments to any category of the Medical Staff shall be provisional for one year." During that period, "[a]ll [of a provisional staff member's] hospital admissions and procedures will be proctored [i.e., observed] by a member of the Active Medical Staff ...." Bylaws of the Medical Staff, Art. III, § 3 (see Plaintiff's Exh. 1).

The Bylaws also provided that

At any time an Active Medical Staff member may delegate his/her responsibility for Emergency Room referral call in his/her specialty to another physician with at least temporary privileges with the same specialty. This also applies to provisional staff members when they are the only representative of their specialty.

*Id.* Plaintiff received emergency room referrals pursuant to this provision of the Bylaws while he was employed by defendant Herman.

Plaintiff terminated his employment relationship with defendant Herman in June, 1984. His letter of resignation accused defendant Herman of making certain false representations. Following plaintiff's resignation, defendant Herman discontinued his "Article III" referrals of Lakeside emergency room patients to the plaintiff. Plaintiff is still a provisional staff member at Lakeside. However, he now receives no emergency room referrals from Lakeside unless a patient specifically requests his services.

Plaintiff alleges that defendants are violating Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2)[2] by monopolizing, attempting to monopolize, and unrea-sonably restraining the practice of orthopedic medicine in the Incline Village area of Nevada. Contemporaneously with the filing of the complaint in this action, plaintiff sought a temporary restraining order and a preliminary injunction (Document # 3).[3] An evidentiary hearing was held on plaintiff's motion on June 20, 1984. In view of the fact that the defendants had received notice of the hearing and were able to present their opposition to plaintiff's application for a temporary restraining order, the Court decided to treat the motion as one for a preliminary injunction.[4] However, such an injunction, if granted, would have extended only for a limited period of time, pending a more extensive hearing in which the issues could be more fully developed.

## ANALYSIS

A party seeking a preliminary injunction in an anti-trust case must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and that the balance of hardships tips sharply in its favor. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1201 (9th Cir.1980). However, at least a minimal showing on the merits is required even when the balance of hardship tips decidedly toward the moving party. *Id.* at 1203.

### Merits of Plaintiff's Claim
### Lakeside

We find no basis under the antitrust laws for condemnation of those provisions

---

**2.** Section 1 of the Sherman Act proscribes every contract, combination or conspiracy in restraint of trade that affects interstate commerce. Section 2 prohibits anyone from monopolizing, attempting to monopolize, or conspiring to monopolize, any part of interstate commerce.

**3.** Section 16 of the Clayton Act (15 U.S.C. § 26) authorizes the granting of injunctive relief in private suits brought by persons injured by violations of the antitrust laws.

**4.** *See VanLeeuwen v. Farm Credit Administration,* 577 F.Supp. 264, 278 (D.Or.1983); *Levas and Levas v. Village of Antioch,* 684 F.2d 446, 448 (7th Cir.1982); 11 C. Wright & A. Miller, Federal Practice & Procedure § 1951 at 499–500 (1973). *Cf. In re Bowoon Sangsa Co.,* 720 F.2d 595, 597 (9th Cir.1983) (Factors considered in determining if temporary restraining order may be characterized as a preliminary injunction (and thus appealable under 28 U.S.C. § 1292(a)(1)) include whether the district court's decision was preceded by notice and an adversary hearing.).

of Lakeside's Bylaws that place restrictions on provisional staff members.[5] The rule that the work of provisional staff members be observed for one year appears to be a reasonable and legitimate means of attempting to control the quality of service that Lakeside offers. Observation gives Lakeside an opportunity to observe the work of those who seek active status, and can yield information that is useful in determining whether a physician is qualified to serve on a hospital staff. The fact that the plaintiff in the present case appears on paper to be both experienced and qualified has no effect on Lakeside's right to observe all provisional staff members as a part of its evaluation process.

■ We also conclude that Lakeside is justified in establishing a policy that gives preference in emergency room referrals to active staff members. As indicated above, Lakeside may justifiably have more confidence in a physician that it has had an opportunity to observe. However, if such a physician is not available, Lakeside also has an interest in having that physician's specialty represented in its emergency room services. In this regard, it is reasonable for Lakeside to limit delegation of emergency room referrals in a given specialty to physicians who have the same specialty as the referring physician. The hospital could reasonably conclude that a physician is more likely to be able to make competent delegations within his own area of specialty.[6] Finally, there was no evidence that Lakeside has unreasonably limited or attempted to limit the number of active staff members in any given specialty.

■ Having concluded that these aspects of the Bylaws do not violate the antitrust laws, we further conclude that it would cause unnecessary hardship to force Lakeside to abandon them so that plaintiff can receive emergency room referrals even though he is not a member of the active medical staff at Lakeside.

*Herman* [7]

■ In the present case, assuming that defendant Herman possesses monopoly power over the delivery of orthopedic services [8] in the Incline Village area,[9] there is no credible evidence that the acquisition or maintenance of that power is or has been willful.[10] Nor is there credible evidence that defendant Herman has engaged in practices that unreasonably restrain interstate trade or commerce.

---

**5.** We note that on their face the Bylaws are neutral, in that any provisional staff member who completes a year's service in this status becomes eligible for active status. However, the issue of whether the Bylaws are in fact neutrally applied is not presently before us.

**6.** In any event, since defendant Herman and the plaintiff are in the same specialty, it is difficult to determine how this restriction in and of itself constitutes a violation by Lakeside of plaintiff's rights under the antitrust laws.

**7.** Plaintiff's employment contract with defendant Herman contained a three-year noncompetition clause. Employment Agreement (Defendant's Exh. B) ¶ 3.18 at 5. It is not clear from the complaint whether plaintiff is challenging this clause in these proceedings. We note that noncompetition clauses are subject to a "rule of reason" analysis under the Sherman Act. *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 900 (9th Cir.1983). Therefore, the plaintiff has the burden of establishing that the clause in question was unreasonable. *See Gough v. Rossmoor*

*Corp.*, 585 F.2d 381, 385 (9th Cir.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). However, plaintiff made no showing that would indicate a chance of success on the merits of this issue. Therefore, we do not consider the validity of the noncompetition clause in evaluating plaintiff's antitrust claims.

**8.** We express no opinion as to whether this is the relevant product market.

**9.** We express no opinion as to whether this is the relevant geographic market.

**10.** In order to establish that a defendant has committed the offense of monopolization, the plaintiff must prove "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966).

■ At the outset, we note that if plaintiff completes the one-year provisional period and attains active status, under the terms of Lakeside's Bylaws he would not be dependent on defendant Herman for emergency room referrals.[11] There is at present no basis for concluding that either Lakeside or defendant Herman, acting alone or in combination, will attempt to prevent plaintiff from becoming an active staff member at the conclusion of the provisional period. That the provisional membership requirement may be giving a temporary advantage to defendant Herman is not a basis for invalidating it in view of the legitimate purposes that it serves.[12]

■ Furthermore, the evidence submitted thus far does not indicate that an antitrust violation was committed when defendant Herman and Mr. Cartledge, the hospital administrator, met and discussed the issue of whether defendant Herman should rescind his delegation of emergency room duty to the plaintiff. Defendant Herman appears to have been within his rights in rescinding the delegation, and he would have been entitled to meet with Mr. Cartledge in order to carry out his intent to do so.[13]

Finally, we conclude that a preliminary injunction requiring defendant Herman to delegate emergency room duties to the plaintiff on the basis of the evidence presented thus far would be an unjustifiable interference with what is in essence a professional and discretionary decision made by defendant Herman concerning who should be allowed to act in his absence in emergency situations, and for that reason would result in unwarranted hardship to him.[14]

### CONCLUSION

In view of the hardship that would be caused to the defendants by the issuance of an injunction, we are unable to conclude at this point that the balance of hardships tips in plaintiff's favor.[15] That being the case, plaintiff is required to show at least a probability of success in order to be entitled to injunctive relief under the *Oakland Coliseum* test. We find that plaintiff has not made such a showing with respect to any of the theories of antitrust liability set forth in his complaint. We therefore conclude that a preliminary injunction should not issue at this time, but that another hearing should be scheduled on plaintiff's application for a preliminary injunction so that a more comprehensive evidentiary presentation can be made.

The foregoing is based on the evidence and record as it existed on June 20, 1984. We express no opinion as to whether the same findings and conclusions might be made under circumstances in which the parties have a lengthier period in which to present evidence.

IT IS, THEREFORE, HEREBY ORDERED that plaintiff's application for a

---

**11.** We recognize that plaintiff contends that the relevant product market is for orthopedic services in general, rather than for emergency room referrals. However, the evidence is that orthopedists rely on such referrals in order to build a practice. Without considering the effect of the noncompetition clause on plaintiff's ability to establish his own practice in the Incline Village area, it would appear that such referrals would be available to plaintiff as an active staff member.

**12.** See discussion in previous subsection.

**13.** *Cf. Pontius v. Children's Hospital,* 552 F.Supp. 1352, 1369 (W.D.Pa.1982) (In the area of physician referrals and staffing decisions, behavior which might in a normal commercial sphere be considered a group boycott subject to *per se* rules of illegality may well be dictated by public service and ethical norms, and as such would not be subject to *per se* condemnation under the antitrust laws.).

**14.** This is particularly true in view of the fact that plaintiff, in a letter terminating his employment with defendant Herman, accused him of making false representations.

**15.** The fact that plaintiff may be encountering difficulty because defendant Herman has rescinded his delegation of emergency room duty does not in and of itself entitle him to expect this Court to force the hospital to abandon its Bylaws relating to emergency room referrals, or to force defendant Herman to delegate a portion of his emergency room duties to the plaintiff.

temporary restraining order and preliminary injunction is denied.

IT IS FURTHER ORDERED that on Wednesday, the 8th day of August, 1984, at 1:30 o'clock P.M., in the United States Courthouse, 300 Booth Street, Reno, Nevada, the defendants shall appear and show cause, if any they have, why a preliminary injunction should not issue. The issue of this Court's subject matter jurisdiction will also be considered at that time.[16] Oral testimony and documentary evidence will be received at said hearing unless the Court subsequently enters its order directing otherwise.

IT IS FURTHER ORDERED that, if he has not already done so, the plaintiff shall have to and including July 6, 1984, within which to serve upon the defendants documents presently filed in this action, together with a copy of this Order to Show Cause.

IT IS FURTHER ORDERED that the defendants shall have to and including July 19, 1984, at 4:00 o'clock P.M., within which to file and serve any briefs, affidavits or other evidence in opposition to the motion for preliminary injunction.

IT IS FURTHER ORDERED that the plaintiffs shall have to and including August 1, 1984, at 4:00 o'clock P.M., within which to file and serve a final reply brief, affidavits or other evidence in support of the motion for preliminary injunction.

IT IS FURTHER ORDERED that each party shall have until July 16, 1984, at 4:00 o'clock P.M., to submit contemporaneous briefs on the issue of this Court's subject matter jurisdiction, together with supporting affidavits or other evidence, if any, and that each party shall thereafter have until July 30, 1984, at 4:00 o'clock P.M., to submit contemporaneous reply briefs on this issue, together with supporting affidavits or other evidence, if any.

16. We recognize that defendants were prepared to submit the issue of jurisdiction for decision at the June 20 hearing. However, since this Order does not change the status quo in any way, the jurisdictional issue is not immediately pressing, although it remains significant (*see Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S.

IT IS FURTHER ORDERED that any material filed pursuant to the preceding paragraph of this Order shall be submitted to the judge designated to hear plaintiff's motion for a preliminary injunction.

738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)) and must be resolved as expeditiously as possible. Under these circumstances, it is appropriate that the issue be argued by the parties in greater depth than would have been possible at the June 20 hearing.