**IDAHO SPORTING CONGRESS, INC.; the Ecology Center; American Wildlands; Idaho Sportsmen's Coalition, Inc.; Alliance for the Wild Rockies, Plaintiffs,**

v.

**The UNITED STATES FOREST SERVICE, an agency of the United States, Defendant,**

and

**Evergreen Forest Products, Inc.; Ochoco Lumber Company d/b/a Malheur Lumber Company; Montana Sundown, Inc., d/b/a Rocky Mountain Log Homes; Kaibab Industries, Inc.; Crown Pacific Inland Limited Partnership; Plum Creek Manufacturing, Limited Partnership; Weyerhaeuser Company; Whiteman Lumber Company, Inc.; Boise Cascade Corporation, Intervenors.**

Civ. No. 93–0390–S–HLR.

United States District Court,
D. Idaho.

Feb. 14, 1994.

D. Bernard Zaleha, Boise, ID, for plaintiffs.

Betty Richardson, U.S. Atty., D. Idaho, D. Marc Haws, Asst. U.S. Atty., Boise, ID, for defendant.

Gary G. Stevens, Saltman & Stevens, P.C., Washington, DC, Christopher C. Burke, Cosho Humphrey Greener & Walsh, Boise, ID, for intervenors Evergreen Forest Products, Inc., Ochoco Lumber Co., Montana Sundown, Inc., Crown Pacific Inland Limited

Partnership, Plum Creek Mfg. Limited Partnership, Weyerhaeuser Co., Whiteman Lumber Co., Inc.

W. Hugh O'Riordan, Davis Wright Tremaine, Boise, ID, Norman D. James, Ryley Carlock & Applewhite, Phoenix, AZ, for intervenor Kaibab Industries, Inc.

Guy G. Hurlbutt, William R. VanHole, Boise Cascade Corp., Boise, ID, for intervenor Boise Cascade Corp.

## AMENDED ORDER ON ALL PENDING MOTIONS

RYAN, Senior District Judge.

### I. FACTS AND PROCEDURE

The plaintiffs filed this action against the United States Forest Service on October 8, 1993. The plaintiffs seek declaratory and injunctive relief on the grounds that the Forest Service violated the Appeals Reform Act ("ARA"), 16 U.S.C. § 1612, and the Administrative Procedures Act, 5 U.S.C. §§ 500–706.

Now before the court are a Motion to Dismiss filed by the Forest Service, cross-motions for summary judgment filed by the Forest Service and the plaintiffs, and other miscellaneous motions. The motions to dismiss and for summary judgment have been fully briefed, including a joint memorandum filed by the intervenors, and a hearing was held on January 19, 1994. The court has carefully reviewed and considered the memoranda filed by the parties, the cases cited therein, and the arguments of counsel made at the hearing. Thus, these motions are now ripe for decision.

■ Briefly, the background of this case is as follows. The plaintiffs challenge the actions of the Forest Service in exempting from administrative appeal certain emergency salvage timber sales in national forests in Idaho, Montana, and Utah.[1] The salvage sales were exempted pursuant to Forest Service regulation, 36 C.F.R. § 217.4, which provides as follows:

(a) The following decisions are not subject to appeal under this part:

. . . .

(11) Decisions related to rehabilitation of National Forest System lands and recovery of forest resources resulting from natural disasters or other natural phenomena such as wildfires, severe wind, earthquakes, and flooding when the Regional Forester or, in situations of national significance, the Chief of the Forest Service determines and gives notice in the Federal Register that good cause exists to exempt such decisions from review under this part.

36 C.F.R. § 217.4(a)(11) (1993).

The plaintiffs contend that this Forest Service regulation was superseded when the ARA was enacted on October 5, 1992. Therefore, the plaintiffs claim that it was unlawful under the ARA for the Forest Service to exempt any salvage timber sales after October 5, 1992. Relevant portions of the ARA provide as follows:

(a) In general. In accordance with this section, the Secretary of Agriculture, acting through the Chief of the Forest Service, *shall establish a notice and comment process* for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewable Resources Planning Act of 1974 ... and *shall modify the procedure for appeals* of decisions concerning such projects.

. . . .

(c) Right to appeal. Not later than 45 days after the date of issuance of a decision of the Forest Service concerning actions referred to in subsection (a), a person who was involved in the public comment process under subsection (b) through submission of written or oral comments or by otherwise notifying the Forest Service of their interest in the proposed action may file an appeal.

. . . .

(e) Stay. Unless the Chief of the Forest Service determines that an emergency situation exists with respect to a decision of the Forest Service, implementation of the decision shall be stayed during the

---

1. The specific sales are listed in the plaintiffs' First Amended Complaint for Declaratory Judg-ment and Injunctive Relief, filed November 9, 1993, at 10–11.

period beginning on the date of the decision—

(1) for 45 days, if an appeal is not filed, or

(2) for an additional 15 days after the date of the disposition of an appeal under this section, if the agency action is deemed final under subsection (d)(4).

16 U.S.C.S. § 1612 (Law.Co-op.1984 & Supp. 1993) (emphasis added).

Until passage of the ARA, Congress had not imposed any statutory requirement on the Forest Service to provide for administrative appeals of decisions affecting national forest lands. Nevertheless, the Forest Service exercised its discretion and established administrative appeal procedures pursuant to detailed regulations. *See* 36 C.F.R. §§ 217 and 251. The most recent Forest Service appeal regulations, adopted in 1989, provide for administrative appeals of decisions arising from compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, and the National Forest Management Act, 16 U.S.C. § 1601, *et seq. See* 36 C.F.R. § 217.

Forest Service regulations allow appeals of both programmatic decisions, such as the adoption or modification of forest plans, and project-level decisions, such as individual timber sales. The regulations also provide that certain decisions are not subject to appeal, including those involving exigent circumstances which are designated by the Regional Forester as arising from natural disasters. In 1992, the Forest Service concluded that the administrative appeals process had become excessively costly, burdensome, and confrontational and was diverting scarce funds away from actual resource management. Consequently, the Forest Service proposed to amend its regulations to exempt most project-level decisions from administrative appeal.

When the Forest Service published its proposed rule change, there was a substantial negative response from the public. The Senate Agricultural Subcommittee on Conservation and Forestry then held an oversight hearing on the proposed change. This led to adoption of the ARA on October 5, 1992, which was attached as a rider to a Department of Interior appropriations bill for 1993.

The ARA directs the chief of the Forest Service to establish a notice and comment process for proposed actions by the Forest Service, and to modify the procedures for appeals of decisions concerning such projects. The record shows that in a letter dated October 2, 1992, the Chief of the Forest Service advised the agency that the existing regulations governing administrative appeals would remain in effect until the final rules and regulations implementing the ARA were in place.

It takes time for a federal agency to draft regulations implementing a new act passed by Congress. The draft rules must go through a notice and public comment period. In this case, the rule-making process was further lengthened by the change in administrations. After the ARA was enacted, the Forest Service prepared draft regulations to establish a notice and comment process and to modify the appeals process, as expressly directed by the ARA. The Forest Service published the draft regulations in the Federal Register on April 14, 1993. *See* 58 Fed. Reg. 19369 (1993). The draft regulations were published to give the public notice and an opportunity for comment as required under the Administrative Procedures Act. After the comment period, the draft regulations were revised and a copy of the proposed final regulations was sent to the Office of Management and Budget on October 1, 1993. After final review, the regulations were published in the Federal Register on November 4, 1993. The regulations became effective on January 4, 1994. The court finds that the time taken by the Forest Service in promulgating the implementing regulations was reasonable.

The Forest Service has provided a detailed summary of each emergency salvage sale at issue in this case in Appendix A attached to the Memorandum of the United States in Opposition to Plaintiffs' Motion for Preliminary Injunction, filed October 29, 1993. The salvage sales were exempted from administrative appeal because of an emergency need to protect forest resources and to salvage value from dead, dying, or infected timber.

The need for these emergency sales arose from epidemics of beetle and moth infestations, root disease, blister rust, windstorms, and fires. The sales are necessary to rehabilitate damaged areas and to prevent further damage on national forest lands and adjacent private lands..

With respect to all of the salvage sales, with the exception of the French Gulch, Quartz Relief, and Sidney salvage sales, a notice was published in the Federal Register notifying the public that the sales were exempted from administrative appeal, and giving the background and justification for each. The record before the court shows that each exempted salvage sale was the subject of an environmental assessment or an environmental impact statement prepared pursuant to NEPA, and/or was the result of a categorical exclusion by the Regional Forester because of a finding that no substantial threat to resources existed. Scoping for each of the environmental analyses required notice to the public and allowed for public input.

Forest supervisors asked the Regional Forester to exempt the salvage sales from administrative appeal because of important timing considerations. After review of the respective environmental analyses, the requests were granted based on the reasons set forth in the notices published in the Federal Register.[2] The court has reviewed these notices. In keeping with the purpose of such sales, the reasons given were generally that the sales were intended to quickly salvage damaged timber, prevent further damage from insects, etc., and reduce fire dangers. The plaintiffs have not raised any substantive challenges to any of the sales. In fact, it appears that the plaintiffs failed to comment on several of the sales, which is a requirement for standing under the ARA.

The logging of the salvage sales is to be done by private logging companies chosen through a bidding process. Eighteen of the challenged salvage sales have been purchased by the defendant intervenors. They depend on the timber from these sales for their respective wood products manufacturing operations. The Forest Service contends that had the plaintiffs filed suit immediately upon passage of the ARA, many of the sales could have been postponed and the timber companies could have secured alternative sources of timber. Injunctive relief at this stage could cause considerable harm to these companies and their employees.

The Forest Service represents that few, if any, miles of new logging roads have been or will be constructed in association with the salvage sales. Some of the salvage sales are still in the bidding process, and for others logging has commenced or been completed.

## II. ANALYSIS

### A. Forest Service Motion to Dismiss

On December 7, 1993, the Forest Service filed a Motion to Dismiss Portions of First Amended Complaint. The Forest Service seeks to have certain of the plaintiffs' claims as to specific salvage sales dismissed on the following grounds: (1) certain of the claims are moot; (2) the plaintiffs have failed to state a claim as to certain of the timber sales because the sales were not exempted from appeal; and (3) the plaintiffs failed to comment on several sales and, therefore, lack standing to challenge those sales under the ARA.

In their response to the motion to dismiss, the plaintiffs concede that the Turkey and Rainbow Meadows salvage sales have been completed and are now moot and should be dismissed.[3] The plaintiffs also concede that the French Gulch, Quartz Relief, and Sidney salvage sales were not exempted from the appeals process and should be dismissed.

The plaintiffs dispute that they failed to comment on certain other salvage sales and, therefore, lack standing to contest those sales under the ARA. In light of the ruling on the cross-motions for summary judgment set forth below, the court need not resolve this issue. Rather, the court will simply deny the motion to dismiss without prejudice

---

**2.** These notices have been provided to the court. The notices are attached to the Declarations of Leonard Farr and Donald W. Foth, filed October 29, 1993.

**3.** It should also be noted that the Rainbow Meadows salvage sale is the subject of an earlier suit raising the same issues now pending in the District of Utah.

with respect to the salvage sales on which the Forest Service contends the plaintiffs failed to comment.

### B. Cross–Motions for Summary Judgment

#### 1. The summary judgment standard.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552.[4]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir.1975) (quoting

First Nat'l Bank v. Cities Serv. Co., Inc., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. See e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

The relevant facts are contained in the record before the court and are not in dispute. Accordingly, this matter is ripe for summary judgment on the legal significance of the undisputed facts.

#### 2. Cross-motions for summary judgment.

■ The primary issue before the court on cross-motions for summary judgment is whether the ARA was self-implementing or whether the Act was to be implemented through administrative rule making. Upon careful review of the entire record in this matter, the court finds that the express language of the statute, the circumstances surrounding its enactment, and the legislative history make clear that the Forest Service was both required and entitled to implement the ARA through administrative rule making. Excerpts from the Congressional Record on the ARA clearly show that the senators expected the Forest Service to implement the ARA through regulation. See Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., filed Oct. 29, 1993, App. D–5.

---

**4.** See also Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
Fed.R.Civ.P. 56(e).

■ In addition to finding in favor of the Forest Service on the main issue, the court further finds that the plaintiffs have failed to show irreparable injury necessary to support their claim for injunctive relief. They have presented no evidence whatsoever, nor have they even suggested that any of the actions of the Forest Service in exempting the salvage sales from administrative appeal have or will cause any harm to the environment. The only injury claimed by the plaintiffs is the denial of a possible right to administrative appeal. Furthermore, even in the absence of an administrative appeal, the plaintiffs could have sought judicial review of the challenged sales if the sales were perceived to threaten environmental injury and/or violate federal law.

On the other side of the ledger, the Forest Service and intervenors have made a strong and well-documented showing that greater harm will occur if the emergency salvage sales do not proceed as soon as possible. The sales are intended to prevent substantial irreparable harm to national forests and adjacent private lands. Thus, the balance of harms weighs in favor of the Forest Service. The strong showing of irreparable harm by the Forest Service further persuades the court that the public interest favors denying the plaintiffs' request for injunctive relief. The record makes it clear to this court that the public interest will be harmed if an injunction is entered.

In summary, the court hereby declares that the express terms of the ARA and the congressional intent behind the statute clearly establish that the Forest Service was required to implement the ARA through administrative rule making. Such rule making was necessary to establish a notice and comment process for proposed actions of the Forest Service, and to modify the procedure for appeals of decisions concerning such projects. The court further declares that it was permissible for the Forest Service to continue to follow its existing rules and regulations while the new regulations implementing the ARA were being drafted and put in place. The time taken by the Forest Service in drafting and implementing the new regulations was reasonable. And, finally, it was permissible for the Forest Service to continue to exempt emergency salvage sales from administrative appeal from October 5, 1992, through January 4, 1994, when the new regulations establishing the modified appeals process became effective.

The court notes that the plaintiffs raised a new claim for relief in their amended complaint filed on November 9, 1993. In their new claim, the plaintiffs contend that the Forest Service violated the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, in relation to the Steen Creek salvage sale. The Forest Service has argued in its moving papers and at the hearing that it is entitled to summary judgment on this claim. The intervenors have also argued that summary judgment in favor of the Forest Service is appropriate on this claim. The plaintiffs have not responded to the arguments of the Forest Service or the intervenors either in their briefing or at the hearing. Therefore, for the reasons put forward by the Forest Service and the intervenors, and given the fact that the plaintiffs have failed to oppose summary judgment, the court will grant summary judgment in favor of the Forest Service on the plaintiffs' claim for relief based on violation of the Clean Water Act.

### III. ORDER

Based on the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to File Their Supplemental Reply and Third Declaration of Ron Mitchell, filed November 9, 1993, should be, and is hereby, GRANTED. The Clerk of Court shall file and docket the Plaintiffs' Supplemental Reply Memorandum in Support of Preliminary Injunction and the Third Declaration of Ron Mitchell now lodged with the court.

IT IS FURTHER ORDERED that plaintiffs' motion for reconsideration of the Order Denying Motion for Preliminary Injunction, filed November 24, 1993, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the Government's Motion to Dismiss Portions of First Amended Complaint, filed December 7,

1993, should be, and is hereby, GRANTED in part and DENIED in part. The motion is granted with respect to the Turkey and Rainbow Meadows salvage sales, and the French Gulch, Quartz Relief, and Sidney salvage sales. The motion is denied without prejudice in all other respects.

IT IS FURTHER ORDERED that the Government's Motion for Summary Judgment, filed December 10, 1993, should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment, filed December 10, 1993, should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that this action should be, and is hereby, DISMISSED.

## *AMENDED DECLARATORY JUDGMENT*

Pursuant to the Amended Order on All Pending Motions filed on February 11, 1994, the court hereby enters the following AMENDED DECLARATORY JUDGMENT:

The express terms of the Appeals Reform Act, 16 U.S.C. § 1612, and the congressional intent behind the statute clearly establish that the United States Forest Service was required to implement the Appeals Reform Act through administrative rule making. Such rule making was necessary to establish a notice and comment process for proposed actions of the Forest Service, and to modify the procedure for appeals of decisions concerning such projects.

The court further declares that it was permissible for the United States Forest Service to continue to follow its existing rules and regulations while the new regulations implementing the Appeals Reform Act were being drafted and put in place. The time taken by the United States Forest Service in drafting and implementing the new regulations was reasonable.

And, finally, the court declares that it was permissible for the Forest Service to continue to exempt emergency salvage sales from administrative appeal from October 5, 1992, through January 4, 1994, when the new regulations establishing the modified appeals process became effective.