The WILDERNESS SOCIETY
and American Wildlands,
Plaintiffs,

v.

Mark REY, Undersecretary of Agriculture; Rodd Richardson, Forest Supervisor of the Bitterroot National Forest; and United States Forest Service, Defendants.

Friends of The Bitterroot; The Ecology Center, Inc.; Center for Biological Diversity; and The Sierra Club, Plaintiffs,

v.

Mark Rey, in his official capacity as Undersecretary of Agriculture; Rodd Richardson, in his official capacity as Forest Supervisor for the Bitterroot National Forest; United States Forest Service, an agency of the U.S. Department of Agriculture; United States Department of Agriculture, Defendants.

Nos. CV–01–219–M–DWM,
CV–01–220–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

Jan. 7, 2002.

Douglas L. Honnold, Timothy J. Preso, EarthJustice Legal Defense Fund, Bozeman, MT, for Plaintiffs in No. CV 01–219–M–DWM.

Wells D. Burgess, U.S. Department of Justice, Environment & Natural Resources Division, Richard L. Rennert, John P. Almeida, U.S. Department of Justice, E.N.R.D. General Litigation, Washington, DC, Bill Mercer, U.S. Attorney, Billings, MT, for Defendants in No. CV 01–219–M–DWM.

Mark D. Fink, Western Environmental Law Center, Eugene, OR, Elizabeth Mitchell, Ronni Flannery, Western Environmental Law Center, Ketchum ID, for Plaintiffs in No. CV 01–220–M–DWM.

Wells D. Burgess, U.S. Department of Justice, Environment & Natural Resources Division, Richard L. Rennert, John P. Almeida, U.S. Department of Justice, E.N.R.D. General Litigation, Washington, DC, Bill Mercer, U.S. Attorney, Billings, MT, for Defendants in No. CV 01–220–M–DWM.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Wildfires of both human and natural origin burned significant areas of the Bit-

terroot National Forest in the summer of 2000. The Forest Service subsequently developed a salvage project for the burned areas and released a draft Environmental Impact Statement for the project in May of 2001. The Forest Service accepted public comment on the DEIS until July 31, 2001. On October 10, 2001 the Forest Service released a final Environmental Impact Statement on the Bitterroot Burned Area Recovery project. The FEIS featured a preferred alternative, known as Alternative F, that was not an alternative in the DEIS. Mark Rey, Undersecretary of Agriculture, signed the Bitterroot Record of Decision on December 17, 2001, maintaining that his approval constituted the final administrative determination for the project.

Plaintiffs now seek a preliminary injunction to stop implementation of the project until the Forest Service complies with the rule of law. That law grants a statutory right to appeal certain Forest Service decisions concerning projects implementing Forest Plans. *See* Pub.L. 102–381, Title III, § 322, Oct. 5, 1992, 106 Stat. 1419; 16 U.S.C. § 1612 Note. Plaintiffs maintain that the Record of Decision for this salvage project is appealable under applicable regulations. *See* 36 C.F.R. §§ 215.7 & 215.8. The right to an administrative appeal must be afforded to any person or organization that participated by oral or written comment on the BAR project. "Any person or organization" means logging interests who may believe they have been shorted nearly 32,000 acres of potential salvage logging from the original proposal; it means local businesses and community officials, it means those interested in environmental issues.

The controlling legal issue raised by the Complaints filed against the Forest Service emanates from the proposition that the agency is acting in express contradiction to an act of Congress. Pub.L. 102–381, Title III, § 322, Oct. 5, 1992, 106 Stat. 1419. After full consideration of the legal arguments by interested parties, both written and oral, I am convinced Plaintiffs are right about the law. When the Temporary Restraining Order was issued I noted:

> In electing to disregard the express mandate of Congress the Forest Service is acting without authority. The agency is the creature of Congress and must follow the clear, express direction of Congress. The precipitous action here of electing to take the law into its own hands will cause the very difficulty the agency reasons it is trying to avoid. The action taken by the Forest service here tends to cause the affected communities of interest to polarize, while the appeal process Congress requires is intended to harmonize to the extent possible the various interests in the decision-making process.

Temporary Restraining Order, December 18, 2002.

I believe my original ruling was correct. The number of comments in the administrative process, over 4,000, show the case is unusual in both public interest and public participation. It is presumptuous to believe that the agency's final decision has a perfection about it that would not be illuminated by interested comment, questioning, or requests for justification of propositions asserted in it. Congress wanted the opportunity for full democratic participation in Forest Service decision making when it created a statutory right to an administrative appeal. Neither the Secretary of Agriculture, the Undersecretary of Agriculture, nor the Forest Service can take away a right the Congress granted or a process Congress demanded.

For the reasons set forth below I am granting a Preliminary Injunction enjoining the Forest Service and the Secretary

of Agriculture from implementing the project until they have complied with the law. The preliminary injunction does not bar the Forest Service from exercising any authority delegated to it by law under statute or regulation that complies with the Appeals Reform Act.

## II. Facts

During the fire season of 2000, wildfires burned extensive areas in the Bitterroot National Forest in western Montana. The fires significantly impacted the forest, the surrounding communities, the persons who use and work in the forest, as well as the environment. After the fires, these factors caused the United States Forest Service to conduct many public meetings, to collect input on post-fire management, and to initiate public scoping on action to be taken in the forest.

A Notice of Intent to prepare an Environmental Impact Statement was published in the Federal Register on February 13, 2001. Three and one half months later, on June 1, 2001, the Forest Service made available its Draft EIS for the Bitterroot Burned Area Recovery Project. The DEIS considered and analyzed five alternatives ranging from taking no action at all to logging up to 73,000 acres of salvageable timber in the Bitterroot National Forest. The preferred alternative in the DEIS, Alternative B, proposed management activities on 73,000 acres. There was extensive public comment on the DEIS, indicating an active and interested community of different interests.

After consideration of the broad range of public comment, the Forest Service revised some of its positions and published a Final EIS for the Bitterroot BAR on October 10, 2001. The preferred alternative in the FEIS, Alternative F, proposed management activities on approximately 46,000 acres, down significantly from the originally-suggested 73,000 acres. The Forest Service then accepted comment on the FEIS for 30 days.

Meanwhile the person with authority closest to the project felt a need to invoke certain regulations to enable immediate logging activities, implicitly assuming the law requiring administrative appeals would be followed. On October 1, 2001, before the release of the FEIS, Bitterroot Forest Supervisor Rodd Richardson petitioned for an emergency situation determination by the Chief of the Forest Service pursuant to 36 C.F.R. § 215.10(d)(1)(iii). Exercise of that authorization was to allow immediate tree cutting to proceed on about 4800 acres and to decommission about 12 miles of road. Under applicable regulations, an emergency determination by the Chief would have allowed the emergent portions of the project to proceed during the pendency of any expected administrative appeal. Inexplicably, Chief of the Forest Service Dale Bosworth chose not to act on Supervisor Richardson's request.[1]

Perhaps the explanation lies in what happened next, the extra legal effort to circumvent the law. On November 23, 2001 Chief Bosworth instead asked Mark Rey, the Department of Agriculture Undersecretary for Natural Resources and Environment, to sign the Record of Decision for the BAR. Chief Bosworth reasoned that having Undersecretary Rey sign the ROD would relieve the Forest Service from any administrative appeals process, which Bosworth reckoned would

---

1. At the January 3, 2002 oral argument I asked counsel for the United States to explain why the Chief would not exercise the legal authority vested in him to permit the logging while an administrative appeal was pending, but at the same time would argue in court that the Temporary Restraining Order should be dissolved because emergent conditions this winter require immediate logging. The issue involves the same logging identified by Rodd Richardson. No answer other than empathy with the Court's conundrum was offered.

delay implementation of urgently needed restoration actions. This unique approach looked to create a non-existent statutory exception by relying on a strained textual reading of the governing statutes and regulations. Chief Bosworth then asked Undersecretary Rey to delay any decision until December 10, 2001 so the Forest Service could provide notice that Undersecretary Rey would sign the ROD. This too was a novel approach to the law.

Undersecretary Rey then signed the BAR ROD on December 17, 2001. The ROD modified Alternative F by further reducing the scope of proposed management activities, providing for salvage tree cutting on about 41,000 acres. There has been no post-ROD comment on modified Alternative F, the process that normally is resolved by the administrative appeal.

Plaintiffs The Wilderness Society and American Wildlands filed suit the next day, CV–01–219–M–DWM, seeking a Temporary Restraining Order and a Preliminary Injunction to require the Forest Service to implement the administrative appeals process for the BAR ROD and to enjoin implementation of the BAR ROD until any administrative appeals have been resolved. Plaintiffs Friends of the Bitterroot, The Ecology Center, Center for Biological Diversity, and the Sierra Club also filed suit on December 18, 2001, CV–01–220–M–DWM, also seeking injunctive relief. All Plaintiffs in both CV–01–219–M–DWM and CV–01–220–M–DWM have participated in the administrative process at each step. Plaintiffs in CV–01–220–M–DWM then filed a Motion for a Preliminary Injunction on December 20, 2001.

The Court issued a Temporary Restraining Order on December 18, 2001 enjoining the Forest Service from implementing the BAR ROD. On December 28, 2001 the Temporary Restraining Order was extended for an additional 10 days. The Court heard argument and took additional evidence on the requested injunctive relief in both cases on January 3, 2001.

Plaintiffs argue that the Forest Service cannot, by having the Undersecretary sign the ROD, circumvent an act of Congress that requires the Secretary of Agriculture to implement an administrative appeal process for Forest Service decisions. The government responds that the administrative head of an agency has the right at any time to re-assume any authority delegated to subordinates and make a final administrative decision. Thus the government argues that Undersecretary Rey's decision is not subject to the appeal requirement of 16 U.S.C. § 1612 Note.

Title 16 U.S.C. § 1612 Note provides that persons who have been involved in the public comment process may file an appeal of a decision of the Forest Service concerning projects and activities implementing land and resource management plans. The BAR ROD is a project that implements a land and resource management plan, and is subject to appeal pursuant to 36 C.F.R. § 215.7. By attempting to exempt this ROD from appeal as required by 16 U.S.C. § 1612 Note, the government is in violation of the law. A Preliminary Injunction is warranted here. Plaintiffs will suffer irreparable harm unless they are allowed to file administrative appeals via the statutorily-defined process.

Plaintiffs in CV–01–219–M–DWM seek only to require the Forest Service to implement an administrative appeal process. Plaintiffs in CV–01–220–M–DWM argue additionally that injunctive relief is due them based on the merits of the government's decision in the BAR ROD. I do not address the merits of the argument, since I find that the Forest Service is in procedural violation of the law, and the proper remedy is to remand this matter to the Forest Service to comply with 16 U.S.C.

§ 1612 Note and allow administrative appeals of the BAR ROD.[2]

## III. Analysis

### A. Preliminary Injunction

■■■■ "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer, Inc. v. Formula International, Inc.,* 725 F.2d 521, 523 (9th Cir.1984); *See also Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200–01 (9th Cir.1980). These two formulations create a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Coliseum,* 634 F.2d at 1201; *Idaho Sporting Congress v. Alexander,* 222 F.3d 562, 565 (9th Cir.2000). Plaintiffs must also show a significant threat of irreparable injury. *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984). The purpose of a preliminary injunction is to preserve the status quo. *Coliseum,* 634 F.2d at 1200.

### B. Appeals Reform Act

■■ The legal issue presented from Plaintiffs' perspective is stated in the following question: Does the Forest Service, acting through the Undersecretary of the Department of Agriculture, have the authority to circumvent an act of Congress that requires administrative appeals of Forest Service decisions about proposed projects on the National Forest?

From the government's perspective the issue is more appropriately stated as follows: Does the head of an administrative agency have the absolute right to assume jurisdiction to decide any matter within that agency, at any stage of the administrative process, and have that decision be the final administrative decision of that agency?

The conflict created by the different perspectives elucidated by the legal questions describes two fundamental propositions. The first question invokes consideration of the rule of law. It is, simply put, the notion that agencies are subject to the regular as opposed to arbitrary exercise of power. The second question invokes consideration of governmental structure. That is, what body of government has the power to make law, or to require certain actions by agencies, Congress or the heads of federal agencies? The answers to these issues are provided by analyzing the law creating administrative appeals and the purpose behind its enactment.

The Appeals Reform Act, codified at 16 U.S.C. § 1612 Note, provides:

(a) **In general.** In accordance with the section, the Secretary of Agriculture, acting through the Chief of the Forest Service shall establish a notice and comment process for proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans developed under the Forest and Rangeland Renewa-

---

**2.** Based on the information presented and record filed, there are substantial questions whether the United States Forest Service has complied with the law concerning the underlying merits of the claims put forth by Plaintiffs in CV–01–220–M–DWM. The balance would likely tip in favor of granting injunctive relief for Plaintiffs based on the standards set by the Supreme Court in *Robertson v. Methow Valley Citizens,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) and the Ninth Circuit in *Idaho Sporting Congress v. Thomas,* 137 F.3d 1146 (9th Cir.1998), *Neighbors of Cuddy Mountain v. United States Forest Service,* 137 F.3d 1372 (9th Cir.1998), and *Idaho Sporting Congress v. Alexander,* 222 F.3d 562, 565 (9th Cir.2000).

ble Resources Planning Act of 1974 (16 U.S.C. 1601 et seq.) and shall modify the procedure of appeals of decisions concerning such projects. . . .

(c) **Right to appeal.** Not later than 45 days after the date of issuance of a decision of the Forest Service concerning actions referred to in subsection (a), a person who was involved in the public comment process under subsection (b) through submission or written or oral comments or by otherwise notifying the Forest Service of their interest in the proposed action may file an appeal.

This statute was not enacted in a vacuum as far as Forest Service frustrations with administrative appeals. Before passage of the Appeals Reform Act, the Forest Service tried to amend its regulations to exempt most project-level decisions from administrative appeal. *See Idaho Sporting Congress v. United States Forest Service,* 843 F.Supp. 1373, 1375 (D.Idaho 1994). After substantial negative response to this proposal from the public, Congress enacted the Appeals Reform Act to codify a person's right to file administrative appeals of Forest Service decisions. *Id.* Of particular concern to the congressional authors of the Appeals Reform Act was the heightened opportunities for the public to participate in the Forest Service decision-making process. *See* 138 Cong. Rec. S11,-643 (daily ed. Aug. 4, 1992)(statement of Sen. Fowler). The Appeals Reform Act

established in law a two-tiered system of notice and opportunity to comment on project level decisions affecting the National Forest System. The first tier established a process by which persons or organizations receive notice and opportunity to comment on proposed actions. The second tier established procedures by which persons or organizations may appeal decisions subsequently made on planned actions.

58 Fed.Reg. 58,904 (Nov. 4, 1993). This second tier of procedures is at issue in this matter.

The government argues that pursuant to 7 C.F.R. § 2.12 the Secretary of Agriculture is not precluded from exercising any authority that she has delegated to any of her subordinates. The argument is bolstered by the premise that nothing in the Appeals Reform Act or its legislative history indicates that Congress intended to interfere with the Secretary's right to assume jurisdiction of a matter within the purview of the Forest Service. The government next argues that the Appeals Reform Act only requires an administrative appeal for "decisions of the Forest Service". The flesh of the argument is that because the BAR ROD was signed by the Undersecretary, the ROD is exempt from the law that requires administrative appeals. This strained premise is predicated on the proposition that the Undersecretary is not an employee of the Forest Service. By this reasoning the statutory right to appeal administratively depends on the title of the decision-maker, not the nature of the decision being made. The government concedes that under this logic the Forest Service could completely circumvent the appeals process simply by having the Undersecretary or Secretary sign any or all controversial project records of decision. The government completes the reasoning in support of its position by asserting that because the Appeals Reform Act and its implementing regulations do not specifically preclude the Secretary from assuming jurisdiction to make a final administrative determination with no subsequent appeal, that this procedure is allowed by the Act.[3]

---

**3.** Plaintiffs pointed out at the January 3, 2002 hearing that there is a factual problem with the government's argument. That is, here the Undersecretary signed the ROD, not the Sec-

retary. The Secretary has a duty to enforce the law and regulations that she must meet, even where she has delegated authority.

■ By its plain language, the Appeals Reform Act requires the Secretary to implement an appeal process for decisions of the Forest Service on proposed actions of the Forest Service concerning projects and activities implementing land and resource management plans. Title 7 C.F.R. 2.12 allows the Secretary to exercise authority she has previously delegated, but it does not eliminate the statutory right to an appeal of a Forest Service decision codified in the Appeals Reform Act. The Secretary is required by statute to have an administrative appeal process; the regulation does not alleviate her statutory duty. Simply having the Undersecretary or Secretary sign a record of decision of the Forest Service does not diminish the fact that the record of decision is a decision of the Forest Service. To hold otherwise defies common sense. All the work on this case from start to finish was done by Forest Service employees or administrators. The implementation of the project, whatever its parameters, will be by the Forest Service and its employees. The notion that a signature by the Undersecretary transforms the action from Forest Service business to the business of some other agency is mystical legal prestidigitation. The decision, not the signatory, is the operative fact for purposes of the Appeals Reform Act. The Secretary may not escape her statutory duty to provide an appeals process by completing the signature line of a Forest Service record of decision.

■ The process of planning and implementing a project on National Forests includes a statutory administrative appeals process. *See Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 730, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Although she has broad discretion to protect forest resources she deems best to meet the purposes delineated by Congress, she may not ignore a specific directive from Congress to provide an administrative appeal. *See, e.g. United States v. Grimaud,* 220 U.S. 506, 522, 31 S.Ct. 480, 55 L.Ed. 563 (1911). The Forest Service may only make regulations for matters "clearly indicated and authorized" by Congress. *Id.* The Appeals Reform Act sets out a specific directive for the Forest Service; the agency may not circumvent it by attempting to create a new rule that any decision signed by the Undersecretary or Secretary is exempt from the statute.

Prior to passage of the Appeals Reform Act the Forest Service could exempt from appeal some projects involving exigent circumstances. *Idaho Sporting Congress,* 843 F.Supp. at 1375. Regulations implementing the Appeals Reform Act do not exempt projects with emergent circumstances from appeal; rather the projects are only made exempt from a stay pending appeal. *See* 36 C.F.R. § 215.10(d). Here Supervisor Richardson petitioned Chief Bosworth to declare an emergency situation under 36 C.F.R. § 215.10(d) for certain portions of the BAR that Richardson felt were exigent. The Chief chose not to act on Supervisor Richardson's request.

The ostensible claimed motive of the Forest Service for attempting to circumvent the administrative appeals process is to speed the matter to its likely destination: this Court. This motive is based on assumptions that are not valid. First, the agency now asks this Court to declare an emergent situation as a justification for dissolving the temporary restraining order. The agency itself refused to make this determination for portions of the BAR that Supervisor Richardson determined fell under the emergency situation regulation. Instead the agency opted to push the full BAR before the Court.

The administrative appeal serves legitimate functions in the deliberative process the agency is required to follow. The administrative appeal is a means for interested participants to question the accuracy

of assumptions or science relied upon in the agency decision. It is a means of permitting the agency to exercise its expertise prior to judicial intervention, if that takes place, by answering the specific allegations of an appellant. The administrative appeal assures compliance with applicable standards, science, and sound analysis. It provides the agency the opportunity to explain why the ROD complies with the applicable standards and statutes. Most importantly, it completes the administrative record so that proper judicial deference to agency decision-making can be measured and applied. It is the one time when interested appellants can find out if relevant data was relied upon or ignored and it provides the agency the opportunity to flesh out conclusive statements or findings that lack the requisite close look or analysis at first blush.

From the agency's perspective the administrative appeal provides an opportunity to correct mistakes or to reconcile inconsistencies, thus narrowing issues that might be subject to judicial review. It also provides a complete record for judicial review and enables a court to realistically assess whether the proposed action is arbitrary or capricious. The agency might alter, amend, or reconsider its decision depending on the issues raised in the administrative appeal. The appeal may avoid a legal challenge or narrow the issues that can be reviewed. Ultimately its force is to allow the democratic process of participation in governmental decisions the full breadth and scope to which citizens are entitled in a participatory democracy.

Unfortunately, the BAR is often seen in a false polemic. Too frequently it is couched as if it is a zero-sum or all-or-nothing proposition. This is not the way the Congress intended the participatory process to work. The Forest Service could have excised the exigent portions of the project for separate consideration under application of the emergency regulations. The agency could have parsed out the portions of the project that are not in controversy and proceeded separately. Whatever the motivation of the agency to proceed as it has, the agency could have addressed the concerns of all parties in administrative appeals, and this it has refused to do.

Another purpose of an administrative appeal is to address the second tier of public participation demanded by the statute before any matter can proceed to court. Standing to sue is garnered only after exhaustion of the statutorily-defined administrative remedies. A plaintiff cannot sue the Forest Service over a record of decision until she has exhausted her administrative appeal remedies. By circumventing the appeals process, the Forest Service seems to be attempting to create jurisdiction and standing in this Court without benefit of exhaustion of the statutorily-required administrative remedies.

Reducing the government's argument to its essence leaves the parties with the simple proposition that the agency thinks there has been enough public input and no more is needed.[4] The reasoning seems to be that if a decision by the Forest Service involves a large project with great public interest and comment, then there should be less opportunity for public participation after the ROD is made. The scale of the project does not dictate the level of opportunity for public participation. Logically,

4. January 3, 2002 hearing: THE COURT: "Well, answer my question, then. What is the advantage of cutting out the administrative appeal in this case? What is the benefit?" MR BURGESS: "I think the benefit, Your Honor, is that it brings the matter to the court earlier, it gets the project underway and eliminates the 105 day delay that would—that would otherwise ensue. If we're talking about strict benefit to the agency."

the converse is true, the more participation at the comment level before the ROD, the greater the need for Administrative appeal, especially where the alternatives considered have expanded or changed. (*See e.g. Swan View Coalition v. Turner*, 824 F.Supp. 923, 932 (D.Mont.1992)) (J. Lovell discussing standing for ESA claim: "The mere fact that the Forest Service is not bound by the recommendations of FWS and that a redrafted biological opinion would not necessarily result in a modified Forest Plan is irrelevant. The asserted injury in this case is that 'environmental consequences might be overlooked ... as a result of deficiencies' in the biological opinion. The fact that the Forest Service might not alter its course in any way following the completion of a new biological opinion does not negate this asserted injury.").

**C. Injunctive Relief**

 Plaintiffs have shown that they have succeeded on the merits of their claim under the Appeals Reform Act, therefore they need to show a possibility of irreparable injury to entitled to injunctive relief. *See Alexander*, 222 F.3d at 565. The Forest Service concedes that irreparable harm to native fisheries may ensue from increased sedimentation due to logging activities.

Injunctive relief is appropriate here while this matter is remanded to the agency for compliance with the Appeals Reform Act. In my view an appeal bond is not required in this case.

Wherefore IT IS HEREBY ORDERED that:

1. Plaintiffs' Motions for Preliminary Injunction are GRANTED as delineated above.
2. This matter is remanded to the United States Forest Service for compliance with the Appeals Reform Act, 16 U.S.C. § 1612 Note.

3. The United States Forest Service is enjoined from implementing any portions of the Bitterroot Burned Area Recovery Project Record of Decision.
4. All deadlines established in the Preliminary Pretrial Order in each of these matters are VACATED.